JUDGE OETKEN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK         15 CV 03497

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION<br><br>Plaintiff,<br><br>v.<br><br>HEET KHARA and NASIM SALIM,<br><br>Defendants, | Civil Action No.<br><br>ECF Case<br><br>JURY TRIAL DEMANDED |



MAY 0 5 2015
U.S.D.C. S.D. N.Y.
CASHIERS

### COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY PENALTIES AND OTHER EQUITABLE RELIEF

Plaintiff U.S. Commodity Futures Trading Commission (the "CFTC" or "Commission"), by and through its undersigned attorneys, hereby alleges as follows:

### I. SUMMARY

1. From at least February 2015 through at least April 28, 2015, Defendants Heet Khara and Nasim Salim engaged in unlawful disruptive trading practices or conduct in the gold and silver futures markets on or subject to the rules of a registered entity, the Commodity Exchange, Inc. ("COMEX"), that were, were of the character or, or were commonly known to the trade as "spoofing" (bidding or offering with the intent to cancel the bid or offer before execution). Defendants' disruptive trading practices or conduct violated Section 4c(a)(5)(C) of the Commodity Exchange Act (the "Act"), 7 U.S.C. § 6c(a)(5)(C).

2. Plaintiff CFTC brings this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), to enjoin Defendants' violative acts and practices and to compel Defendants' compliance with the Act. In addition, Plaintiff CFTC seeks civil monetary penalties and such

other equitable relief, including but not limited to disgorgement, as this Court deems necessary and appropriate.

## II. JURISDICTION AND VENUE

3. The Court has jurisdiction over this action pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2012), which authorizes the Commission to seek injunctive relief against any person, or to enforce compliance with the Act, whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any acts or practices constituting a violation of any provision of the Act or any rule, regulation or order thereunder.

4. Venue properly lies with this Court, pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because the Defendants transact business in this District and the acts and practices in violation of the Act occurred, are occurring, or are about to occur in this District.

## III. PARTIES

5. **Plaintiff U.S. Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged by Congress with the administration and enforcement of the Act and Regulations promulgated thereunder.

6. **Defendant Heet Khara** is an individual who resides in the United Arab Emirates. Defendant Khara transacted business in New York by entering orders or causing orders to be entered on COMEX, a futures exchange located in New York, New York. Defendant Khara has never been registered with the Commission.

7. **Defendant Nasim Salim** is an individual who resides in the United Arab Emirates. Defendant Salim transacted business in New York by entering orders or causing orders to be entered on COMEX, a futures exchange located in New York, New York. Defendant Salim has never been registered with the Commission.

## IV. OTHER RELEVANT ENTITIES

8. **Commodity Exchange, Inc. ("COMEX")** is futures exchange located in New York, New York. COMEX is registered with the Commission as a designated contract market for trading futures and options under the Act. COMEX is owned and operated by CME Group, Inc. ("CME Group"), which is a Delaware corporation with its headquarters in Chicago, Illinois. CME Group's COMEX lists for trading Silver futures and Gold futures contracts, which trade on open outcry rings in New York, New York or the CME Globex electronic trading platform.

9. **Futures Commission Merchant A ("FCM A")** is registered with the CFTC as a futures commission merchant. FCM A, among other things, provides access to futures trading of metals products through CME Group exchanges, including Silver futures and Gold futures contracts listed with and subject to the rules of COMEX.

10. **Futures Commission Merchant B ("FCM B")** is registered with the CFTC as a futures commission merchant. FCM B, among other things, provides access to futures trading of metals products through CME Group exchanges, including Silver futures and Gold futures contracts listed with and subject to the rules of COMEX.

## V. FACTS

A. <u>Background</u>

    a) **Defendants' Trading Accounts**

11. On or about January 22, 2015, Defendant Khara sought to open a futures trading account with FCM A.

12. Defendant Khara was introduced to FCM A through introducing broker Zonyx, DMCC ("Zonyx"). Zonyx is not registered with the Commission. The head and authorized trader of Zonyx is Defendant Salim.

13. On January 29, 2015, FCM A sent an email to Zonyx indicating its introduced account for Khara had been approved.

14. On or about January 29, 2015, Defendant Khara deposited approximately $400,000 into the account at FCM A. As of March 5, 2015, Defendant Khara had made withdrawals of approximately $618,000 from the account at FCM A, which is approximately $218,000 more than what was deposited with FCM A.

15. After closing his account with FCM A on or about March 13, 2015, Defendant Khara opened a futures trading account with FCM B. Defendant Khara deposited approximately $400,000 into the account at FCM B in March 2015. Defendant Khara made an additional wire transfer into the account of approximately $115,000 on or about April 10, 2015, for total deposits of approximately $515,000.

16. Defendant Salim traded futures contracts through a different futures commission merchant, FCM B. Defendant Salim, through Zonyx, has held an account with FCM B since 2008.

        b)     **Defendants' Disruptive Trading Activity: Spoofing**

17. Between at least February 2015 and at least April 28, 2015, Defendant Heet Khara entered orders for Gold and Silver contracts on COMEX, which he did not intend to execute, and thereby engaged in disruptive trading activity, known as spoofing.

18. In February 2015, for example, Defendant Khara entered orders through FCM A for Gold and Silver futures contracts that he did not intend to execute. In other words, Defendant Khara submitted bids or offers on the COMEX exchange with the intent to cancel the bid or offer before execution. Defendant Khara entered such orders by, among other means, entering several orders on one side of the market ("layered orders") while also having one or more smaller orders

on the opposite side of the market. Once the smaller order(s) traded, Khara would cancel the layered orders.

19.     The trading information on February 18, 2015 is as follows: From 04:02:17.233 to 04:02:18.265 a.m. Central Standard Time, Khara placed four 4-lot bids in the Silver futures contract at the third through fourth book levels (price of 16455-16460). Approximately one second later, at 04:02:19.329, Khara began to enter 4-lot offers. Between 04:02:19.329 and 04:02:28.312 a.m. Khara entered 53 4-lot offers for a total sell side exposure of 212 contracts. The offers were entered in descending price starting at 16490 through 16465. Two-milliseconds after entering the last 4-lot offer (04:02:28.314) 8 contracts of Khara's 16 resting bids (i.e., the four 4-lot bids) traded. All 212 of the 4-lot offers were cancelled in full after this sequence.

20.     In February 2015, CME Group's Market Regulation Department ("Market Regulation") identified Defendant Khara's trading practices and informed Defendant Khara that it was investigating his conduct.

21.     On February 24, 2015, Market Regulation informed FCM A of its concerns with respect to Khara's order entry and trading practices. Later that day, on February 24, 2015, FCM A sent an e-mail to Khara and Salim (Zonyx, DMCC) informing them that Market Regulation had concerns that Defendant Khara may be engaged in disruptive trading practices known as spoofing.

22.     On February 25, 2015, Market Regulation identified that on or about that same day, Khara had engaged in similar disruptive trading practices to those Khara engaged in on February 18, 2015, as set forth above. Market Regulation contacted FCM A, and as a result, FCM A suspended Defendant Khara's electronic trading access.

23. Market Regulation's review of Defendant Khara's trading activity while at FCM A reflects that Khara engaged in a pattern of spoofing activity during the time the account was open.

24. Within the Relevant Period, Defendant Khara made a profit of over $200,000 in approximately one month of trading in the account with FCM A.

25. After FCM A suspended Khara's electronic trading access, Defendant Khara closed his account and withdrew all of the funds in the account. Defendant Khara then opened an account with a different futures commission merchant, FCM B. FCM B is a COMEX clearing member firm.

26. Defendant Salim had an existing trading account at FCM B, through Zonyx, where Defendant Khara opened his second account.

27. Defendants Khara and Salim engaged in similar trading practices in a coordinated fashion through FCM B, including as recently as April 28, 2015.

28. For example, on April 28, 2015, Defendant Salim had an order for Gold futures on one side of the book. Defendant Khara entered layered orders on the opposite side of the book as Defendant Salim's orders, which caused COMEX market participants to fill Defendant Salim's orders. After Defendant Salim's orders were filled, Defendant Khara cancelled his layered orders.

29. An example of the coordinated effort to engage in spoofing is as follows: On April 27, 2015, at 05:49:37.957 a.m. Central Standard Time, Salim placed one 3-lot bid in the June 2015 Gold futures contract at the second book level (price of 11817). Approximately three seconds later, at 05:49:40.725 a.m., Khara began to enter 5-lot offers. Between 05:49:40.725 and 05:49:43.725 a.m., Khara entered 17 5-lot offers for a total sell side exposure of 85

contracts. The offers were entered in descending price starting at 11820 through 11818. One-millisecond after entering the fourteenth 5-lot offer (05:49:43.420 a.m.) all 3 contracts of Salim's bid traded (05:49:43:421). After this sequence, Khara cancelled all of his offers.

30. Based on this conduct, Market Regulation conducted a review of Defendants' accounts, for the period of March 1, 2015 to April 29, 2015, in the April 2015 Gold, June 2015 Gold and May 2015 Silver contracts.

31. During the Relevant Period, Defendants Khara and Salim appeared to routinely place large aggregate quantities opposite smaller orders that would then trade, and then the large orders would be cancelled. On information and belief, Khara traded more than 300 futures contracts as a result of Salim's large opposite-side exposure, and Salim traded more than 150 futures contracts as a result of Khara's large opposite side exposure.

32. In addition to having engaged in coordinated spoofing activity with Khara, Salim also engaged in spoofing activity on an individual basis. For example, on March 25, 2015, at 3:43:57.652 a.m. CST, Salim entered an order in April 2015 Gold futures on CME Globex to sell one contract at 11923, which joined the best offer in the market at that time. Approximately five seconds later, at 3:44:02.782 a.m., Salim began entering 5-lot buy orders at the price of 11922, which was the best bid price. He entered seven consecutive 5-lot buy orders each approximately one-fifth of a second apart; while he was in the process of entering these orders, his 1-lot sell order at 11923 traded. One-half second later, at 3:44:04.373 a.m., Salim cancelled all seven of his buy orders.

33. On April 29, 2015, Market Regulation contacted FCM A and FCM B regarding Defendants' disruptive trading practices. Market Regulation attempted to contact Defendants Khara and Salim by telephone but was unsuccessful. Market Regulation also sent emails to

Defendants Khara and Salim indicating that their trading activity appeared disruptive. The emails requested that Defendants Khara and Salim cease all trading activity on CME Group exchanges, that they not attempt to withdraw funds held at any firm involved in trading on CME Group exchanges, and that they submit to an interview by exchange staff.

34. On April 29, 2015, Defendant Khara responded to Market Regulation's email indicating that he would like to withdraw his funds. Defendant Khara also contacted FCM B and requested that it close his account and attempted to withdraw his funds.

35. Defendant Salim did not respond to Market Regulation's correspondence.

36. On or about April 30, 2015, CME Group issued notices summarily denying Defendant Khara and Salim access to all CME Group markets and any trading platforms owned or controlled by CME Group.

37. On or about May 1, 2015, Market Regulation was contacted by a representative of FCM B, who advised that Khara sent FCM B an email suggesting that CME Group had authorized a return of the funds held in Khara's account.

38. Khara's representation was false. CME Group did not make any statements or representations authorizing the return of the funds.

## VI. VIOLATION OF THE COMMODITY EXCHANGE ACT

## COUNT I

### Violation of Section 4c(a)(5)(C) of the Act,
### 7 U.S.C. § 6c(a)(5)(C)
### (Disruptive Practices – Spoofing)

39. The allegations set forth in paragraphs 1 to 38 are re-alleged and incorporated herein by reference.

40. Section 4c(a)(5)(C) of the Act, 7 U.S.C. § 6c(a)(5)(C), makes it unlawful "for any person to engage in any trading, practice, or conduct on or subject to the rules of a registered entity that -- (C) is, is of the character of, or is commonly known to the trade as, 'spoofing' (bidding or offering with the intent to cancel the bid or offer before execution)."

41. As described above, beginning in at least February 2015 and continuing to at least April 28, 2015, Defendants violated Section 4c(a)(5)(C) by entering orders that they intended to cancel before execution.

42. Section 13(a) of the Act provides that "[a]ny person who commits, or who willfully aids, abets, counsels, commands, induces or procures the commission of, a violation of any of the provisions of the Act . . . or who acts in combination or concert with any other person in any such violation, or who willfully causes an act to be done or omitted which if directly performed or omitted by him or another would be a violation of the provisions of this Act . . . may be held responsible for such violation as a principal."

43. Because Defendant Khara and Defendant Salim aided and abetted each other's spoofing conduct and acted in combination or concert with each other in the spoofing conduct in violation of the Act, as set forth above, pursuant to Section 13(a) of the Act, each are responsible as a principal for the violations of Section 4c(a)(5)(C) of the Act.

44.    Section 2(a)(1)(B) of the Act provides that "[t]he act, omission, or failure of any official, agent, or other person acting for any individual, association, partnership, corporation, or trust within the scope of his employment or office shall be deemed the act, omission, or failure of such individual, association, partnership, corporation or trust, as well as of such official, agent, or other person."

45.    Because Defendant Khara and Defendant Salim were "acting for" each other as agents, within the scope of their employment or office, pursuant to Section 2(a)(1)(B), the spoofing conduct in violation of the Act shall be deemed the act of the other, such that each are responsible as principals for the violations of Section 4c(a)(5)(C).

46.    Each act of disruptive trading practice, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4c(a)(5)(C) of the Act.

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that the Court, as authorized by Section 6c of the Act, as amended, 7 U.S.C. §13a-1, and pursuant to its own equitable powers:

A.    Enter an order finding that Defendants are liable for violating Section 4c(a)(5)(C), 7 U.S.C. § 6c(a)(5)(C);

B.    Enter orders of a preliminary and permanent injunction restraining and enjoining Defendants, and any of their affiliates, agents, servants, employees, successors, assigns, attorneys, and persons in active concert with them who receive actual notice of such order by personal service or otherwise, from directly or indirectly violating Section 4c(a)(5)(C) of the Act, 7 U.S.C. § 6c(a)(5)(C);

C. Enter orders of preliminary and permanent injunction restraining Defendants and any of their affiliates, agents, servants, employees, successors, assigns, attorneys, and persons in active concert with them from:

1. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. §1a(40) (2012));

2. Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2014)) for their own personal account or for any account in which they have a direct or indirect interest;

3. Having any commodity interests traded on their behalf;

4. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

5. Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

6. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014); and/or

7. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2014)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2012)), registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014).

D. Enter an order directing Defendants to pay civil monetary penalties, to be assessed by the Court, in an amount not to exceed the higher of $140,000 or triple the monetary gain to them for each violation of the Act, as described herein;

E. Enter an order providing for such other and further remedial and ancillary relief, including, but not limited to, disgorgement and trading and registration bans, as this Court may deem necessary and appropriate;

F.     Enter an order requiring Defendants to pay costs and fees, as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2012); and

G.     Enter an order providing such other and further relief as this Court may deem necessary and appropriate under the circumstances.

## VII. JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: May 5, 2015

Respectfully submitted,

U.S. COMMODITY FUTURES
TRADING COMMISSION

Manal M. Sultan
Deputy Director

By: _____
Patryk J. Chudy
David W. Oakland
Neel Chopra
Katherine Rasor

Division of Enforcement
140 Broadway, 19th Floor
New York, New York 10005
Phone: (646) 746-9700
Fax: (646) 746-9939